[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

----------------------
Nos. 01-14195, 01-14222, 01-15049
----------------------
D. C. Docket No. 00-00647 CV-ORL-19-KRS

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 16, 2002
THOMAS K. KAHN
CLERK

RICHARD A. BROUGH, JR.,

Plaintiff-Counter
Defendant-Appellee,

versus

IMPERIAL STERLING LTD., a Delaware corporation,

Defendant-Counter
Claimant-Counter
Defendant-Appellant,

HARRIET GOLDING,
a.k.a.
Harriet Golding Martin,

Counter-Defendant.

----------------------
Appeal from the United States District Court
for the Middle District of Florida
----------------------

**(July 16, 2002)**

Before MARCUS and KRAVITCH, Circuit Judges, and VINSON[*], Chief District Judge.

KRAVITCH, Circuit Judge:

This appeal presents the question of whether, under Florida law, it is too speculative for a jury to award damages for future unearned commissions to an employee whose contract has been repudiated by his employer. We hold that, where it is unclear whether the employee would have received the commissions under the contract, it is too speculative for a jury to award compensation for the lost commissions. We therefore reverse the award of damages for future commissions. We affirm the award of damages involving other issues.

## I. BACKGROUND

Imperial Sterling Limited ("ISL") is a real estate management and investment company that owns a number of properties in Brevard County, Florida. ISL derives significant revenue from the leasing and management of these properties. In 1996, Richard Brough was interviewed for the position of ISL property manager for the company's Florida operations. The interviewing was conducted primarily by Harriet Golding, the president of ISL at the time, but

---

[*]Honorable C. Roger Vinson, Chief U.S. District Judge for the Northern District of Florida, sitting by designation.

Brough also flew to New York to meet with Golding's son Jerrold Levy, the vice-president of ISL and majority shareholder of the company. Brough was given the position. A handwritten contract, dated August 27, 1996 and signed by Golding, provided that Brough was entitled to an annual salary of $60,000 that would be raised to $65,000 after six months, as well as medical insurance and a car allowance. The contract also specified that Brough would "receive comissions [sic] on sales of land or buildings but no comissions [sic] on leases." The contract indicated that Brough's job was to "manage and lease all Melbourne properties and work on the sale of same." A second contract from Golding, dated October 29, 1997, extended the terms of Brough's employment agreement for five years starting November 1, 1997. The second letter specified that "there will be 10% commissions on all sales, swaps or purchases of Florida Properties."

In 1999, Levy and Golding had a dispute that led to Levy taking over the presidency of the company and removing Golding from office.[1] Shortly thereafter, Levy indicated to Brough that he was interested in selling the Florida properties and that Brough should find a broker to help with the property sales. In a phone conversation approximately a week-and-a-half later, Levy and Brough discussed

---

[1] The dispute between Golding and Levy is the subject of a separate lawsuit in the Southern District of Florida. See Golding v. Imperial Sterling, Ltd., Case No. 99-8906-CIV-JORDAN/BANDSTRA).

Brough's 10% commission on the sale of any of the properties. Levy and Brough give differing accounts of the phone conversation, but Levy subsequently claimed that it was the first time he had ever heard about the commission contract. Levy asked to see copies of the contracts, and Brough forwarded copies to him approximately one month later. Five months after receiving copies of the contracts, Levy sent a letter to Brough denying that ISL was bound by the two contracts. As a result, Brough left his job and sued ISL for breach of contract.

ISL brought counterclaims against Brough and Golding for fraud and conspiracy to commit fraud. Both the counterclaims and ISL's defense of the breach of contract relied primarily on the theory that there never was a genuine commission agreement and that the handwritten contracts were fabrications made by Brough and Golding after Golding's dispute with Levy. The claims went to a jury trial that began on June 11, 2001, more than a year before the second contract would have expired. At the close of ISL's evidence, the district court granted Brough and Golding's motion for judgment as a matter of law on the fraud counts, but denied ISL's motion for judgment as a matter of law on the breach of contract claim. The jury found in favor of Brough on the breach of contract claim, awarding him total damages of $3,199,560: $406,000 for lost commissions on the one property that had been sold before the trial, $2,585,000 in future commissions

4

on other Florida properties that had not yet been sold, and $208,560 in lost salary, benefits, and vehicle allowance.[2]

## II.  DISCUSSION

A.     *The denial of ISL's motion for judgment as a matter of law on the future commission damages awarded on Brough's breach of contract claim*

A district court's denial of a motion for judgment as a matter of law is reviewed by this court de novo.  Maytronics, Ltd. v. Aqua Vac. Sys., Inc., 277 F.3d 1317, 1320 (11th Cir. 2002). This court, like the district court, must consider all the evidence, and the inferences drawn therefrom, in the light most favorable to the nonmoving party.  Wideman v. Wal-Mart Stores, Inc.,  141 F.3d 1453, 1454 (11th Cir. 1998).  The motion can be granted only if there was "no legally sufficient basis for a reasonable jury to find in favor" of the nonmoving party.  Carter v. Decisionone Corp., 122 F.3d 997, 1003 (11th Cir. 1997).

ISL argues that the issue of unearned future commissions should not have been submitted to the jury because it was too speculative. Although lost profits are an appropriate measure for damages from breach of contract, the loss "must be

---

[2] At the time of the trial, one warehouse property had been sold for $4,060,000.

5

proven with a reasonable degree of certainty before it is recoverable.  The mind of

a prudent impartial person should be satisfied that the damages are not the result of

speculation or conjecture."  Johnson Enters. of Jacksonville, Inc., v. FPL Group,

Inc., 162 F.3d 1290, 1325 (11th Cir. 1998) (quoting Shadow Lakes, Inc. v. Cudlipp

Constr. & Dev. Co., 658 So. 2d 116, 117 (Fla. 2d Dist. Ct. App. 1995)).  In this

case, the jury's award of $2,585,000 for "future commissions on other Florida

properties" was based on speculation that ISL would sell its property, and therefore

we reverse the award of those damages.

The cases involving Florida law that are most analogous to this one are

Himes v. Brown & Co. Sec. Corp., 518 So. 2d 937 (Fla. 3d Dist. Ct. App. 1987)

and Kane v. Shearson Lehman Hutton, Inc., 916 F.2d 643 (11th Cir. 1990).[3]  In

---

[3] The Florida cases involving the payment of commissions to terminated employees are not analogous to this one.  In each of those cases, all of the conditions required to earn a commission had been completed prior to the termination of the employee, and the cases merely stand for the proposition that the employees were due the commissions they had already earned.  See, e.g., Cornell Computer Corp. v. Damion, 530 So. 2d 497, 498 (Fla. 3d Dist. Ct. App. 1980) (terminated employee who was entitled to commissions when she placed computer technicians was owed her commissions from placements she made prior to termination); Linton v. Pension Servs. Corp., 389 So. 2d 247, 249-50 (Fla. 2d Dist. Ct. App. 1980) (terminated employee was entitled to commissions on payments received by the corporation which had been billed at time of employee's termination).  In this case, Brough only was entitled to commissions for "sales, swaps or purchases" of property, none of which had occurred at the time that ISL repudiated his contract.

Himes, an investor argued that he should be awarded lost profits against a securities firm, because the firm's failure to properly execute his purchase orders prevented him from buying and selling securities at the optimal time. Himes, 518 So. 2d at 938. The Florida Court of Appeals held that there was no evidence that the investor "would have completed the time-sensitive transactions at precisely the correct time" and therefore any damages were speculative and non-recoverable. Id. In Kane, an investor similarly claimed that he failed to receive profits because his broker failed to inform him about negative information related to a company he had invested in. Kane, 916 F.2d at 647. This court, citing Himes, held that the investor could not recover his anticipated profits based on the speculation that "he would have sold the securities at the optimal time." Id. Both Himes and Kane stand for the proposition that damages may not be awarded for lost profits when those profits are dependant on a party taking an action that it is unclear he would have taken. In this case, it was unclear at the time of the trial whether ISL would have sold its Florida property before November 1, 2002, when Brough's contract expired.

Brough introduced substantial evidence at trial intended to prove that the properties would have been sold before November 1, 2002. The evidence included (1) minutes from a board of director's meeting in which Levy indicated that ISL

7

should retain real estate experts to assist with the sale of all the Florida properties; (2) testimony that Brough was instructed to prepare and market the properties for sale before he left the company; (3) evidence that an outside real estate firm was hired to market and sell the properties; (4) evidence that, at the time of trial, all of the Florida properties were listed for sale and some offers had been received; and (5) expert testimony that the properties were likely to sell within a year or less from the date of the breach, given the market area and prices. While this evidence is probative of the likelihood that the properties would sell if ISL decided to proceed with the property sales, it rests on the assumption that ISL would continue to act in that manner. Under the contract, ISL had no obligation ever to make a sale of property and the company could have decided at any time to change its business strategy and discontinue efforts to sell the property. The jury could only award Brough damages by speculating that ISL would leave the properties on the market and accept offers from buyers.

Under Florida law, once ISL repudiated the contract, Brough had an immediate cause of action against it. See Hosp. Mortgage Group v. First Prudential Dev. Corp., 411 So.2d 181, 182 (Fla. 1982). In this particular case, however, it would have been advisable for Brough to have waited until the term of his contract had ended before bringing this action because there was absolutely no

8

means by which a jury could determine with reasonable certainty what Brough's commissions would have been had the contract not been repudiated. Had ISL not repudiated the contract, Brough might have worked diligently for the entirety of the contract and never received a single commission, or he could have received a great windfall if ISL sold all of its Florida properties.[4]

Because we conclude that the award of damages for unearned future commissions was the result of improper speculation, we hold that the district court erred in denying ISL's motion for judgment as a matter of law with respect to this issue and accordingly reverse the jury's award of $2,585,000 for future commissions on Florida properties.

B.    *The denial of ISL's motions for new trial and judgment as a matter of law based upon alleged trial errors*

ISL also argues that its motions for new trial and for judgment as a matter of

---

[4] Our ruling does not conflict with Florida contract law holding that a party to a contract who makes impossible a happening of a condition precedent may not thereby avoid liability on the contract. See Babe, Inc. v. Baby's Formula Serv. Inc., 165 So. 2d 795, 798 (Fla. 3d Dist. Ct. App. 1964). That principle only applies when one party to a contract prevents another party to a contract from performing their obligations. In this case, the contract did not give Brough the right to sell property at his whim; it only provided that Brough would receive a commission *if a property was bought, sold or swapped*. ISL cannot be held liable for failing to sell its properties when it had no obligation to do so under the contract.

law should have been granted due to a number of trial errors. We will examine each perceived error individually.

*1. Net Worth*

The general rule is that, during trial, "no reference should be made to the wealth or poverty of a party, nor should the financial status of one party be contrasted with the other's." Batlemento v. Dove Fountain, Inc., 593 So. 2d 234, 241 (Fla. 5th Dist. Ct. App. 1991). The erroneous admission of such evidence can constitute reversible error. See, e.g., Baggett v. Davis, 169 So. 372 (Fla. 1936); Deese v. White Belt Dairy Farms, Inc., 160 So. 2d 543 (Fla. 2d Dist. Ct. App. 1964).

In this case, counsel for Brough made several references during the trial to the wealth of ISL and Levy. ISL argues that the admission of these references constitutes reversible error. Some of the statements ISL now contends were inadmissible were objected to at trial; others were not. We will consider each set of statements in turn.

Where a proper objection was raised at trial, this court reviews a district court's evidentiary rulings for abuse of discretion, and evidentiary rulings are overturned only when the moving party establishes that the ruling resulted in a

10

substantial prejudicial effect. Piamba Cortes v. Am. Airlines, Inc. 177 F.3d 1272, 1305 (11th Cir. 1999). Several of the challenged evidentiary admissions involved evidence that was probative to one or more issues in the case, and therefore we find no error in its admission. This includes evidence regarding the value of the Florida properties and their list prices, which was probative of the amount of damages, and evidence regarding the value and profitability of ISL's Florida subsidiaries, which was probative of the likelihood that the large commission contract was authentic. The remainder of the objected-to evidentiary admissions was not probative of any material issue and should have been excluded. This includes testimony regarding ISL's value and the value of Levy's personal assets. Any error resulting from these admissions was harmless, however, because there was a considerable amount of admissible evidence at trial allowing the jury to determine that both ISL and Levy were wealthy parties. Batlemento, 593 So.2d at 242 n.16 (noting that error in admitting wealth evidence may be harmless "where the record otherwise contained enough properly admitted evidence from which the jury could figure out the relative economic status of the parties").

For evidence and argument to which no objection has been raised, this court reviews for plain error. See United States v. Massey, 89 F.3d 1433, 1441 (11th Cir. 1996); Oxford Furniture Cos. v. Drexel Heritage Furnishings, Inc., 984 F.2d

11

1118, 1128-29 (11th Cir. 1993). For there to be plain error, there must (1) be error, (2) that is plain, (3) that affects the substantial rights of the party, and (4) that seriously affects the fairness, integrity, or public reputation of a judicial proceeding. United States v. Humphrey, 164 F.3d 585, 588 n.3 (11th Cir. 1999).

In this case, ISL failed to object when Brough's counsel elicited testimony regarding the value of Levy's trust account. ISL also failed to object when Brough's counsel made a number of inappropriate statements during closing argument explicitly contrasting Brough's financial status with that of ISL and Levy. Brough's counsel stated to the jury that Levy has a "one hundred million dollar company [while] Mr. Brough is simply an employee trying to make a living down in Florida." Brough's counsel further characterized the dispute as one between "an individual who has a wife who is working, who has a baby at home, a new home, who lives based upon the income that's generated from those particular things, particular items, this job, his wife's job, versus a one hundred million dollar company." He also told the jury that ISL breached the contract because it was "willing to take the risk of dealing with the potential lawsuit from an individual whose living [was] based on his job, versus a corporation that has at least three lawyers in place, at least three lawyers in place at one time, and has one hundred million dollars in assets to go forward with that lawsuit." Golding's attorney also

12

made several references to ISL's wealth during closing argument. These statements were prejudicial and should have been excluded. Nonetheless, "a finding of plain error 'is seldom justified in reviewing argument of counsel in a civil case.'" Oxford Furniture, 984 F.2d at 1128 (quoting Woods v. Burlington N. R.R. Co., 768 F.2d 1287, 1292 (11th Cir. 1985) (per curiam), rev'd on other grounds, 480 U.S. 1 (1987)). We find that the arguments of counsel, although improper, do not rise to the level of plain error because they did not seriously affect the fairness, integrity, or public reputation of the proceeding.

## 2. Present Value[5]

Florida law requires a jury to reduce an award of future profits to its present value. W.R. Grace & Co.-Conn. v. Pyke, 661 So. 2d 1301, 1302 (Fla. 3d Dist. Ct. App. 1995). "Present value of future damages in most cases . . . is determined by expert testimony that provides information concerning a total amount of damages that will be incurred in the future and then provides an appropriate interest rate for discounting those damages to present value." Mission Square, Inc. v. O'Malley's, Inc., 783 So.2d 1151, 1152 (Fla. 1st Dist. Ct. App. 2001). There is no requirement,

---

[5] Due to our disposition of the issue of unearned future commissions, this issue is relevant only to the jury's award of $208,560 in future salary, benefits and vehicle allowance.

however, that a party introduce expert testimony to aid a jury in its determination of present value. Seaboard Coast Line R.R. v. Burdi, 427 So. 2d 1048, 1050 (Fla. 3d Dist. Ct App. 1983) ("Jurors, as persons of common experience, know generally that one needs to invest less than a dollar today to insure the return of a dollar in the future, so that expert testimony, while helpful, may hardly be considered indispensable to a consideration of the question."). Here, the jury was properly instructed that "[d]amages for breach of contract may include losses or harm that will be suffered in the future as a result of the breach. However, such damages must be limited to the present cash value of the future loss." Therefore, we find that the district court did not commit error by allowing the jury to calculate damages without the testimony of an expert on present value.

There also was no error resulting from the fact that the jury arrived at a damages value equal to the amount of future damages that Brough's expert calculated would be lost in salary, benefits, and vehicle allowance. See Waxman v. Truman, 792 So.2d 657, 659 (Fla. 4th Dist. Ct. App. 2001) ("[T]he fact that a present value award for future economic damages is the same as the future value sum does not mean that the jury failed to follow the instructions to reduce the future sum award to present value."); Burgess v. Mid-Fla. Serv., 609 So.2d 637, 638 (Fla. 4th Dist. Ct. App. 1992) ("a jury's failure to arrive at a present value

14

calculation that is smaller than the future economic damages awarded does not necessarily prove a failure to follow the court's instructions").[6] We therefore find no error relating to the present value determination.

*3. District court's statement about Golding's motive*

Comments by the trial judge will cause reversal only where the comments "'excite a prejudice which would preclude a fair and dispassionate consideration of the evidence.'" Wilson v. Bicycle S., Inc., 915 F.2d 1503, 1508 (11th Cir. 1990) (quoting Quercia v. United States, 289 U.S. 466, 472 (1932)). In assessing whether prejudice exists that has affected the parties' substantial rights, a court must consider the record as a whole and not merely isolated remarks. Id. at 1509. ISL argues that the district court prejudiced its case when it remarked that Golding's "motive in this suit would be to defend herself." Taken in context,

---

[6] There are several Florida cases that stand for the proposition that a damage award should be reversed if the award has not been reduced by a present value calculation. See, e.g., N.E.P. Int'l Inc. v. Falls, 629 So. 2d 1019, 1019 (Fla. 4th Dist. Ct. App. 1993); Vibrant Video, Inc. v. Dixie Pointe Assocs., 567 So. 2d 1003, 1004 (Fla. 3d Dist. Ct. App. 1990). In those cases, however, the damages were assessed by the trial court, not a jury, and therefore it was easy to determine from the trial court's order that a present value calculation was not made. By contrast, this court has no way of knowing that the jury failed to make a present value determination, and cannot assume that it did not merely because the jury's award was the same as the total future damages.

15

however, the comment appears to be an innocuous misunderstanding.

During the cross-examination of Golding, Golding's lawyer objected several times to questions about her "lavish lifestyle." The district court asked ISL's lawyer to explain the relevance of the "lavish lifestyle" testimony, and counsel replied that the testimony went to "her motive in this suit." The court then made the confusing, but accurate, statement that:

> She's a defendant in this suit. She didn't file a claim in this suit. Motive in this suit would be to defend herself. I think you have exposed enough of this. You can argue when the jury is out, if you wish.

We do not perceive that the district court's statement precluded the jury from a fair and dispassionate consideration of the evidence. ISL was not even prejudiced by the fact that the district court cut short its line of questioning because ISL subsequently cross-examined Golding at length about her "lavish lifestyle." We therefore perceive no error resulting from the district court's comment.

## 4. The testimony of Bert Freehof

ISL argues that the district court erred by allowing Bert Freehof, the broker handling ISL's property sales, to testify after ISL had completed its case. Freehof testified primarily as to the values of ISL's properties, the listing prices of the properties, and the number and amounts of offers received on the properties. A

16

trial court has broad discretion to exercise control over the order of presentation at trial. <u>Geders v. United States</u>, 425 U.S. 80, 86-87 (1976).[7] ISL was offered the opportunity to put on additional evidence after Freehof's testimony, but it declined. We find no error in the district court's decision to allow Freehof to testify.

*5. Closing argument statement concerning expert testimony*

In a pretrial order, the district court ruled that "the fact that ISL retained a [handwriting expert] is unduly prejudicial and the revelation of such information can and should be avoided." ISL contends that the following statement by Brough's attorney during closing argument violated that order:

> So there's no testimony on their side of the case, you know, they're saying it's fabricated, that these are phony documents, but they have no evidence of when these documents were actually prepared. There has been no expert testimony presented to you, in this case, about when these documents were prepared. There has been no forensic document examiner that's come before you.

This statement did not violate the pretrial order because it only stated generally that

---

[7] ISL cites several cases in which appellate courts affirmed district court decisions to exclude evidence from rebuttal that properly belonged in the case-in-chief. <u>See, e.g.</u>, <u>Emerick v. U.S. Suzuki Motor Corp.</u>, 750 F.2d 19, 21-22 (3d Cir. 1984); <u>Morgan v. Commercial Union Assurance Cos.</u>, 606 F.2d 554, 556 (5th Cir. 1979); <u>Smith v. Conley</u>, 584 F.2d 844, 846 (8th Cir. 1978). These courts did not indicate, however, that the admission of such evidence would have been reversible error; they merely said that it was within the discretion of the judge to admit or deny such evidence.

17

ISL did not call an expert, and not that ISL had failed to call an expert that it previously had consulted. We find no error in the comment.

C.    *The grant of Brough's and Golding's motions for judgment as a matter of law on the fraud counterclaims*

ISL argues that it was error for the district court to grant Brough's and Golding's motions for judgment as a matter of law on the fraud counterclaims.[8] To prove a prima facie case for fraud, ISL had to produce evidence that: (1) Brough and Golding made a false statement or omission of a material fact; (2) that was intended to induce ISL to act; (3) that was relied upon; and (4) that caused damages to ISL. Palm Beach Roamer, Inc., v. McClure, 727 So.2d 1005, 1007 (Fla. 5th Dist. Ct. App. 1999). The only costs incurred by ISL in reliance on Brough's allegedly fraudulent documents were expenses related to hiring a lawyer, searching through ISL's records to find evidence of the contract, and holding a director's meeting to discuss the validity of the documents. Florida law does not recognize these costs as damages sufficient to sustain a fraud claim. See Empire Fire & Marine Ins. Co. v. Black, 546 So.2d 732, 732 (Fla. 3d. Dist. Ct.

---

[8] In light of the fact that the jury found in favor of Brough on the breach of contract claim, it is clear that they did not believe the contracts were fraudulent and therefore ISL would not have prevailed even if this issue had gone to the jury.

18

App. 1989) (holding that insured party that was compensated for injury had "no legally cognizable damage" from the insurer's misrepresentation even though he was forced to litigate in order to receive payment).

## III. CONCLUSION

For the foregoing reasons, we REVERSE the denial of ISL's motion for judgment as a matter of law on the issue of future commissions totaling $2,585,000. We AFFIRM the remaining jury awards to Brough of $406,000 for commission on the sale of the warehouse property and $208,560 for salary, benefits, and vehicle allowance. We also AFFIRM the grant of judgment as a matter of law in favor of Golding and Brough on the fraud counterclaims. The case is REMANDED for proceedings consistent with this opinion.