[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-12182

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 7, 2010
JOHN LEY
CLERK

D. C. Docket No. 05-00211-CV-J-25-HTS

GENNADY IVANOVICH PUSHKO,
BRJANSKGIPLES L.L.C.,
a Russian corporation,

                                    Plaintiffs-Counter-Defendants-
                                                    Appellees,

versus

SAMUEL KLEBENER, individually and
in his capacity as Director, President and
Secretary of Double Sams U.S.A., Inc.,
DOUBLE SAMS U.S.A., INC.,
a Florida corporation,
DOUBLE SAM, INC.,
a Florida corporation,

                                    Defendants-Counter-Claimants-
                                                    Appellants.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

(October 7, 2010)

Before EDMONDSON, HILL, and ALARCÓN,[*] Circuit Judges.

ALARCÓN, Circuit Judge:

Samuel Klebener and Double Sams U.S.A., Inc. appeal from the grant of a directed verdict against them and in favor of Gennady Ivanovich Pushko and BrjanskGIPles L.L.C. on two separate breach of contract counterclaims. They also appeal from the District Court's denial of a renewed motion for judgment as a matter of law or, in the alternative, motion for new trial following a jury verdict in favor of Plaintiff BrjanskGIPles L.L.C. on a civil theft claim. We find no error and affirm.

## I

## A

This action arose out of a dispute over a business relationship forged between Appellee Gennady Ivanovich Pushko ("Pushko"), a national and citizen of Russia, and Appellant Samuel Klebener ("Klebener"), a national of Russia and a naturalized citizen of the United States. Through their oral agreements and written records, Pushko and Klebener indicated that at least one of the main objects of the relationship was to facilitate the purchase of new equipment to modernize the operations of Appellee BrjanskGIPles L.L.C. ("BrjanskGIPles"), a vertically-

[*]Honorable Arthur L. Alarcón, United States Circuit Judge for the Ninth Circuit, sitting by designation.

integrated Russian timber and wood-processing company in which Pushko was a shareholder. Pushko had experienced difficulty securing financing in his native Russia because, due to the renascent economy in that country at the time, Russian banks were charging in excess of sixteen percent interest. Pushko testified at trial that Klebener represented that he could obtain financing at a favorable rate from Bank of America to purchase the equipment BrjanskGIPles needed. Klebener's testimony did not refute this.

In furtherance of their plan to procure the equipment for BrjanskGIPles, Klebener and Pushko formed Double Sams U.S.A., Inc. ("DSUSA"). Pushko purchased 500 shares of DSUSA stock for $50,000.00, and Klebener, who already owned 100 shares in DSUSA, was to pay $50,000.00 to purchase another 400 shares. Thereafter, DSUSA and BrjanskGIPles entered into a Master Lease Agreement ("MLA"). The MLA provides that DSUSA was to "coordinate [the] lease" of equipment BrjanskGIPles. Under the terms of the MLA, lease payments were to begin 30 days after the equipment was shipped to Pushko and BrjanskGIPles. The MLA reads as follows in relevant part:

### 4. PREPAYMENT

Lessee [BrjanskGIPles] is agreed to pay twenty five percent (25%) of the total cost of the Equipment in a sum of Eight hundred thirty thousand USD (USD $830 000.00) as the prepayment (the "Prepayment") within five business days upon signing the MLA.

3

> Lessee hereby agrees that Lessor [DSUSA] shall not, by virtue of its entering into this Master Lease, be required to remit any payments to any manufacturer or other third party until Lessee accepts the Equipment subject to this Master Lease.
>
> Lessee is agreed to wire transfer funds as the Prepayment to the following account: [details of DSUSA account at Bank of America omitted]

## 5. DELIVERY

> Lessee hereby assumes the full expense of transportation and in-transit insurance to Lessee's premises and installation thereat of the Equipment. The Equipment referenced in the Schedule A shall be delivered to the Lessee's principal place of business specified above within ninety (90) business days upon receiving the Prepayment.

The MLA also required BrjanskGIPles to provide DSUSA with an insurance deposit in the amount of $51,170.00. BrjanskGIPles never made the $51,170.00 insurance deposit.

Pushko testified at trial that Klebener communicated to him that the $830,000.00 would only be needed for a few days, to show the bank that DSUSA was eligible for the financing, after which the $830,000.00 would be returned to BrjanskGIPles. Klebener testified at trial that he had not agreed to return the $830,000.00 after a few days. Additionally, under the terms of the MLA, neither Klebener nor DSUSA was obliged to obtain a loan.

In order to obtain the $830,000.00, BrjanskGIPles received a short-term loan from a Russian bank, secured by Pushko's business assets, at a 16.5% interest rate.

4

On November 4, 2004, BrjanskGIPles wired the $830,000.00 to DSUSA. The $830,000.00, minus a wire-transfer fee, was deposited in a DSUSA account with Bank of America.

Within a few days of wiring the $830,000.00, Pushko began contacting Klebener about the return of the funds. When no funds had been returned a week after the wiring of the $830,000.00, Pushko insisted on the return of the money. A few days later, Pushko received from Klebener a Notice of Termination, dated November 15, 2004. It provided that

> [i]n accordance with BrjanskGIPles, LLC request to terminate MLA No 517-1/04 due to BrjanskGIPles, LLC organizational structure changes, this is to inform you that your request of November 5th to terminate MLA No 517-1/04 is approved, and the balance of your payment is transferred to your requested account and is subject to investment in the Russian market.

Pushko directed BrjanskGIPles's director to sign and return the Notice of Termination. That was done, and Pushko sent Klebener instructions for wiring the $830,000.00 to BrjanskGIPles. On November 17, 2004, Klebener indicated in an electronic mail message that a "money wire" would be sent not later than November 19, 2004. Klebener also forwarded to Pushko what appeared to be a November 17, 2004 electronic mail message from John Johnston, a Bank of America customer service representative. The November 17, 2007 e-mail indicated that Johnson had received instructions for the bank to transfer the "full

5

prepayment" to BrjanskGIPles and that the transfer would be made as soon as the request was translated into English, signed by all parties, and returned to Bank of America. The $830,000.00 was never returned to BrjanskGIPles. Checks admitted into evidence at trial demonstrated that Klebener used funds from the DSUSA account for personal purchases and expenses.

On March 8, 2005, Pushko and BrjanskGIPles initiated this litigation against Klebener and DSUSA and others, asserting claims for fraud, conversion, breach of contract, breach of the duty of good faith and fair dealing, and unjust enrichment. At the same time, Pushko and BrjanskGIPles served a written demand at Klebener's home and principal place of business for $830,000.00 for compensation resulting from the alleged civil theft of that amount of money belonging to Pushko and BrjanskGIPles. Pushko and BrjanskGIPles received no response to the written demand. As a result, they amended their complaint to add a claim for civil theft (Count III). Answering Pushko and BrjanskGIPles's Third Amended Complaint, Klebener and DSUSA asserted several affirmative defenses and ten counterclaims. In their amended answers and affirmative defenses, Klebener and DSUSA admitted that they received the civil theft demand letter and asserted as their first affirmative defense that Klebener and DSUSA properly retained the $830,000.00 from BrjanskGIPles.

A jury trial commenced on September 15, 2008. Over the course of the two-week trial, the parties presented evidence regarding the creation and termination of the MLA. At the close of the evidence, both sides moved for a directed verdict as to each of the remaining claims against them. The District Court granted Klebener and DSUSA's motion for a directed verdict as to Counts I and IV of the complaint. It also granted Pushko and BrjanskGIPles's motion for a directed verdict on Counts I, II and V of the countercomplaint. Only BrjanskGIPles's civil theft claim (Count III of the plaintiffs' complaint) against Klebener and DSUSA remained for consideration by the jury.

The jury returned a special verdict for BrjanskGIPles, finding that both Klebener and DSUSA had acted with "criminal intent; that is with the intent to deprive [BrjanskGIPles], either temporarily or permanently of a right to . . . or a benefit from" property of BrjanskGIPles that the Klebener and DSUSA had "obtained or used or attempted to obtain or use." The jury found that BrjanskGIPles was entitled to $830,000.00 of damages. Pursuant to Florida's civil theft statute, the District Court tripled the damages and entered a final judgment of $2,490,000.00 in favor of BrjanskGIPles. Klebener and DSUSA filed a renewed motion for judgment as a matter of law or, in the alternative, for a new trial. The District Court denied that motion. Klebener and DSUSA filed a timely notice of

appeal. The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1332. This Court has jurisdiction to review the District Court's final order pursuant to 28 U.S.C. § 1291.

## II

## A

Klebener and DSUSA appeal from the grant of a directed verdict in favor of Pushko and BrjanskGIPles on Klebener and DSUSA's counterclaims for breach of the MLA and breach of the parties' agreement to terminate the MLA (Counts I and II of the countercomplaint) and from the District Court's denial of Klebener and DSUSA's request for a directed verdict on Pushko and BrjanskGIPles civil fraud claim. This Court reviews a trial court's ruling on a motion for judgment as a matter of law pursuant to Rule 50(a) of the Federal Rule of Civil Procedure *de novo*. *Perera v. U.S. Fidelity and Guar. Co.*, 544 F.3d 1271, 1274 n.1 (11th Cir. 2008). In *Carter v. City of Miami*, 870 F.2d 578 (11th Cir. 1989), this Court wrote that

> we consider all the evidence, and the inferences drawn therefrom, in the light most favorable to the nonmoving party. If the facts and inferences point overwhelmingly in favor of one party, such that reasonable people could not arrive at a contrary verdict, then the motion was properly granted. Conversely, if there is substantial evidence opposed to the motion such that reasonable people, in the exercise of impartial judgment, might reach differing conclusions,

then such a motion was due to be denied and the case was properly submitted to the jury.

*Id.* at 581 (footnotes omitted); *see also* Fed. R. Civ. P. 50(a)(1) (a court may grant a motion for judgment as a matter of law against a party "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue").

Klebener and DSUSA's first argument is that the District Court erred in granting Pushko and BrjanskGIPles's request for a directed verdict on Klebener and DSUSA's breach of contract counterclaims (Counts I and II of the countercomplaint). Ruling from the bench, the District Court noted that it thought the language of the MLA was ambiguous. The District Court also found that there was insufficient evidence of damage, that Klebener and DSUSA's damages evidence was too speculative, and that there was "no evidence that the defendant either had the equipment or could afford the equipment, or otherwise, could get the equipment." Regarding Klebener and DSUSA's counterclaim for breach of the termination agreement, the District Court similarly ruled that there was no evidence of damage as a result of that conduct. The District Court also noted that it was troubled by the fact that the termination agreement purported to preclude Pushko and BrjanskGIPles from bringing suit.

9

Klebener and DSUSA argue that the District Court erred in granting entering a directed verdict in favor of Pushko and BrjanskGIPles's on the breach of contract counterclaims because the evidence presented at trial gave rise to a genuine issue of disputed material fact regarding formation of the parties' agreements and whether they were breached. We disagree. The District Court correctly concluded that Klebener and DSUSA failed to demonstrate that they were damaged as a result of the alleged breaches. *See Born v. Goldstein*, 450 So. 2d 262, 264 (Fla. Dist. Ct. App. 1984) ("Proof of lost profits is generally derived from proof of income and expenses for a reasonable period of time prior to the breach. Where the evidence only pertains to gross receipts or fails to establish expenses with specificity, an award of damages will be reversed." (citations omitted)).

Klebener and DSUSA also argue that the District Court erred in denying their request for a directed verdict on Pushko and BrjanskGIPles's civil fraud claim because the March 8, 2005 civil theft demand letter did not strictly comply with the requirements of Section 772.11 of the Florida Statutes.[2] First, Klebener and

_____

[2] Section 772.11 provides as follows:

> . . . Before filing an action for damages under this section, the person claiming injury must make a written demand for $200 or the treble damage amount of the person liable for damages under this section. If the person to whom a written demand is made complies with such demand within 30 days after receipt of the demand, that person shall be given a written release from further civil liability for the specific act of theft or exploitation by the person making the written demand.

10

DSUSA contend that the demand notice was inadequate because it was addressed only to "Samuel Klebener" and not to DSUSA. Second, Klebener and DSUSA argue that the demand notice sought $830,000.000, but the evidence at trial demonstrated that the proper amount was $826,966.00, which was the amount deposited after Bank of America deducted its wire transfer fee from the $830,000.00.

In ruling on Klebener and DSUSA's renewed motion for judgment as a matter of law, the District Court concluded that Klebener and DSUSA's argument had no merit. The District Court based this determination on Klebener and DSUSA's admissions that Klebener's home address was DSUSA's principal place of business; that Klebener was sued in both his individual capacity and his capacity as director, president, and secretary of DSUSA; and that both Klebener and DSUSA had received the demand letter. Accordingly, the District Court concluded as follows:

> Even assuming that the demand letter, as worded, failed to comply with the Florida civil theft statute as to DSUSA, . . . Defendants . . . waived their objections as to any possible defects in the demand letter by failing to allege them as affirmative defenses in their answer, by failing to deny with specificity and particularity that the conditions precedent to the bringing of a civil theft claim had been complied with, by failing to seek the dismissal of their claim in their

Fla. Stat. § 772.11 (2002).

11

April 28, 2005 motion to dismiss, and by failing to assert such defects in their subsequent motion to dismiss.

Mar. 31, 2009 Order at 5-6; *see Ingersoll v. Hoffman*, 589 So.2d 223, 224 (Fla. 1991) (holding that "the failure to comply with the prelitigation notice requirements of section 768.57 may be excused by a showing of estoppel or waiver"). We agree. Similarly, the District Court did not err in determining that the demand notice correctly sought $830,000.00, the amount of Pushko and BrjanskGIPles's actual loss. *See* Fla. Stat. § 722.11 (2002) (providing for "a cause of action for threefold the actual damages sustained").

**B**

Klebener and DSUSA allege that the District Court committed other errors in denying their renewed motion for judgment as a matter of law or, in the alternative, for a new trial. We review the District Court's denial of a motion for a new trial for an abuse of discretion. *Action Marine, Inc. v. Continental Carbon Inc.*, 481 F.3d 1302, 1309 (11th Cir. 2007). "Deference to the District Court is particularly appropriate where a new trial is denied and the jury's verdict is left undisturbed, as in this case." *Id.* (internal quotations and citations omitted). This Court also reviews ruling on the admission of evidence for an abuse of discretion, *Millennium Partners, L.P. v. Colmar Storage, LLC*, 494 F.3d 1293, 1301 (11th Cir. 2007), and "evidentiary rulings are overturned only when the moving party

12

establishes that the ruling resulted in a substantial prejudicial effect." *Brough v. Imperial Sterling Ltd.*, 297 F.3d 1172, 1179 (11th Cir. 2002). "For evidence and argument to which no objection has been raised, this court reviews for plain error." *Id.*

Klebener and DSUSA contend that the District Court erred in denying their motion for a new trial by permitting improper closing argument about how Klebener spent the $830,000.00 that was deposited into DSUSA's account, that other investors lost money to Klebener, and matters excluded from evidence. In ruling on these contentions, the District Court noted that Klebener and DSUSA had failed to object at trial, or in their Rule 50(a) motion, that documentary evidence of Klebener's use of the funds from the DSUSA account had been admitted into evidence.[3] The District Court properly instructed that argument by counsel was not evidence. *See Brough*, 297 F.3d at 1179-80 (finding that "the arguments of counsel, although improper, [did] not rise to the level of plain error because they did not seriously affect the fairness, integrity, or public reputation of the proceeding").

---

[3] The Court notes that Klebener's attempts to intimate that counsel for Pushko and BrjanskGIPles repeatedly and improperly attempted to question witnesses in the presence of the jury about Klebener's use of $830,000.000, Appellants' Principal Br. at 29-30, are not supported by the record.

13

Klebener and DSUSA further argue that the District Court abused its discretion by permitting an undisclosed witness to testify and by allowing two lay witnesses to render expert opinions. The District Court ruled that it would not address those arguments because Klebener and DSUSA had failed to raise them in their Rule 50(a) motion. Mar. 31, 2009 Order at 10. The District Court also found that "no miscarriage of justice resulted" from the admission of the challenged testimony. The record indicates that Pushko and BrjanskGIPles provided ample notice of their intention to call a corporate representative of Bank of America to testify that the November 17, 2004 electronic mail message from John Johnston was not, in fact, from a Bank of America customer service representative. Additionally, the record demonstrates that the District Court considered Bank of America employee Kevin Holzendorf's experience in making initial determinations about whether loans should be submitted to underwriting, and it considered the reliability of Holzendorf's conclusions. The District Court also determined that the evidence was relevant. Finally, the record demonstrates that attorney John Ball was competent to testify about the legal effect of the documents he created for Klebener and DSUSA when he was engaged to perform corporate legal work for Klebener, Pushko, and DSUSA. The District Court did not abuse its discretion in admitting the challenged testimony.

## C

Klebener and DSUSA identify two additional grounds for determining that the District Court erred in entering judgment against either Klebener in his individual capacity or both Klebener and DSUSA. Their first argument is that the District Court erred in entering judgment against Klebener in his individual capacity. This argument proceeds from two premises: that Pushko and BrjanskGIPles were required to pursue a shareholder's derivative claim against Klebener, and that the evidence at trial demonstrated that the majority of the $830,000.00 was used consistent with the terms of DSUSA's shareholder agreement, which provided that Klebener was solely responsible for the management of all DSUSA business activities in the United States. Klebener and DSUSA also argue that the District Court improperly pierced the corporate veil in order to hold Klebener responsible in his individual capacity. Ruling on these challenges as they were raised in Appellants' renewed motion, the District Court explained

> The Court notes that Defendants have already admitted that Klebener was sued in his individual capacity and in his capacity as a director president, and secretary of DSUSA. (*See* Dkt. 191). The Court also notes that civil theft is an intentional tort. (*See* Dkt. 291). Further, even assuming that Klebener never obtained the money that was the subject of the civil theft count, he still could be liable for using or attempting to obtain or use the money. (*See id.*)

15

Considering the evidence in the light most favorable to Plaintiff, the Court finds Defendants' arguments unpersuasive, as the evidence demonstrated that Klebener directly participated in the theft. *See Aboujaoude v. Poinciana Dev. Co. II*, 509 F. Supp. 2d 1266, 1277 (S.D. Fla. 2007) ("If, however, a director or officer commits or participates in the commission of a tort, whether or not it is also by or for the corporation, he is liable to third persons injured thereby, and it does not matter what liability attaches to the corporation for the tort."); *Wadlington v. Continental Medical Services, Inc.*, 907 So. 2d 631, 633 (Fla. Dist. Ct. App. 2005) (stating that "individual officers and agents of a corporation may be held personally liable for their tortious acts, even if such acts were committed within the scope of their employment or as corporate officers") (internal quotation marks omitted).

Mar. 31, 2009 Order at 9. We agree with the District Court's analysis of this contention.

Klebener and DSUSA also argue that BrjanskGIPles failed to state a claim for civil theft because the claim was based on, and was not independent of, a breach of contract claim. Appellants' Principal Br. at 53 (citing Florida case law for the proposition that a civil theft clam based on a contract must "go beyond" and "be independent from" a breach of contract and concluding that the District Court erred because "Appellees' claim was founded on an agreement and could have been discharged by the payment of money."). The District Court declined to address this argument because it had not been raised in Klebener and DSUSA's Rule 50(a) motion. Mar. 31, 2009 Order at 9-10. The record indicates that Klebener and DSUSA raised this defense for the first time after the trial had ended.

16

Klebener and DSUSA forfeited this defense by failing to raise it at or before trial. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 507 (2006) ("[T]he objection that a complaint 'fail[s] to state a claim upon which relief can be granted,' Rule 12(b)(6), may not be asserted post-trial. Under Rule 12(h)(2), that objection endures up to, but not beyond, trial on the merits[.]" (quoting *Kontrick v. Ryan*, 540 U.S. 443, 459 (2004))).

## CONCLUSION

For all of the above reasons, the judgment of the District Court is

**AFFIRMED**.