[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————————

No. 22-10780

Non-Argument Calendar

————————————————

WL ALLIANCE LLC,

Plaintiff-Appellee,

*versus*

PRECISION TESTING GROUP INC.,
GLENN STUCKEY,

Defendants-Appellants.

————————————————

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 3:19-cv-04459-RV-HTC

————————————————

Before WILSON, JORDAN, and BRANCH, Circuit Judges.

PER CURIAM:

This case involves a partnership dispute between Plaintiff-Appellee WL Alliance and Defendants-Appellants Precision Testing Group, Inc. and Glenn Stuckey (collectively, the defendants). After a jury trial on WL Alliance's claims for wrongful disassociation and breach of partnership agreement, the defendants were found liable for an aggregate $3.3 million in damages. The defendants appeal, arguing that the damage award included damages for lost future profits that were not "reasonably certain," and that the damage awards were not supported by the evidence because there was no accounting.

After careful review, we conclude the damage awards were in accord with Florida law. Accordingly, we **AFFIRM**.

## I.

We assume the parties are familiar with the factual history of this case and summarize only the relevant points. WL Alliance and the defendants partnered to provide specialized technicians to the energy utility company First Energy. Under their business arrangement the defendants formally contracted with First Energy to provide the technicians and received payments from First Energy. WL Alliance was responsible for actually recruiting the technicians and for managing their payroll. The partners intended to split profits fifty-fifty and settled up their accounts on a quarterly basis.

After a disagreement about the amounts being remitted from the defendants to WL Alliance, the partnership was terminated. Stuckey, the owner and principal of Precision Testing, terminated the contract between Precision Testing and First Energy. This contract contained an at-will termination clause. Stuckey then caused another entity he owned, JJL Consulting, to enter into a similar contract with First Energy. The effect was to cut WL Alliance out of the business arrangement with First Energy.

WL Alliance sued, alleging that the defendants and WL Alliance were partners on the First Energy contract, and that Stuckey's actions constituted a wrongful disassociation from the partnership (Count 1) and a breach of the partnership agreement (Count 3). WL Alliance also requested an equitable accounting of the partnership accounts (Count 2). The defendants did not counterclaim for a reciprocal accounting. Pre-trial, the parties stipulated that Count 2 would be tried to the bench after the jury verdict, "if necessary."

At trial the jury heard testimony regarding the course of the parties' business, and the prospect that the business with First Energy would continue for several more years. The jury also heard expert testimony from both sides on the valuation of the business. WL Alliance's expert provided a present value calculation of the partnership at the time of the disassociation. The defendants' expert reviewed WL Alliance's calculation but did not provide his own independent valuation.

Pre-verdict, the defendants moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a), arguing that

there was insufficient evidence to support the future damages. Specifically, they argued that, because the contract with First Energy was terminable at-will, damages based on that contract were too speculative as a matter of Florida law. The district court denied this motion. The jury found that a partnership did exist and awarded $1.7 million in past damages, and $1.6 million in future damages against the defendants.

Post-verdict, WL Alliance moved the court to enter judgment on counts 1 and 3 for the money damages, and to moot count 2's request for an equitable accounting. WL Alliance noted that it had achieved its goals of discovering what it was owed under the partnership through the discovery process and no longer needed an equitable accounting. The defendants objected, arguing that an accounting was required under Florida law and sought to: (1) amend their answer to add a reciprocal accounting counterclaim to conform to the trial pursuant to Federal Rule of Civil Procedure 15(b)(2), and (2) stay entry of judgment pending a bench trial on the accounting counts. The district court denied this motion, noting that an accounting was not required under Florida law and therefore WL Alliance's request for an accounting was moot. Further, the court enforced its pre-trial scheduling order and refused to allow the late amendment of the defendants' answer.

Finally, the defendants filed a renewed motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b), reiterating their arguments that an accounting was required and that the future damages were too speculative. The district court denied

this motion, holding that the accounting argument was waived because it was not presented in the Rule 50(a) motion and was unsupported by the record.  The district court further held that the evidence was sufficient to support the award of future damages.

## II.

We review the denial of motions for judgment as a matter of law de novo and apply the same standard as the district court. *Collado v. United Parcel Serv., Co.*, 419 F.3d 1143, 1149 (11th Cir. 2005).  Judgment as a matter of law is only warranted where, taking all evidence in favor of the non-movant, no reasonable jury could have reached a verdict for the non-movant.  *Id.*

This is a diversity action, and both parties agree that Florida substantive law governs this appeal.  *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938).

## III.

### A.

We begin with the defendants' argument that there was insufficient evidence to support the award of future damages.  We have previously held that Florida law requires future damages to be proved with "reasonable certainty."  *Nebula Glass Int'l, Inc. v. Reichold, Inc.*, 454 F.3d 1203, 1212 (11th Cir. 2006) (citing *Auto-Owners Ins. Co. v. Tompkins*, 651 So.2d 89, 90–91 (Fla. 1995)).  Florida law distinguishes between proving the causation of damages and proving the amount of damages.  The plaintiff must prove with reasonable certainty that their lost profits were caused by the

defendant's breach; but, once proven, need only provide a reasonable "yardstick" to judge the amount of damages. *Id.* at 1213–14, 1217 (quoting *W.W. Gay Mech. Contractor, Inc. v. Wharfside Two, Ltd.*, 545 So.2d 1348, 1350–51 (Fla. 1989)).

Here, Precision Testing argues that the future damages cannot be proved with reasonable certainty because the contract between the defendants and First Energy was terminable at-will and "for convenience." Thus, without an enforceable guarantee that the contract would continue, any damages based on its continuation are the result of pure speculation. The defendants rely primarily on our case *Brough v. Imperial Sterling Ltd.*, 297 F.3d 1172 (11th Cir. 2002), where we considered a real estate broker's claim for lost future commissions based on the possible sale of certain pieces of real estate. There we held that Florida law made those damages too speculative because there was no guarantee, contractual or otherwise, that those properties would have sold during the real estate broker's contract and thus no reasonable certainty he would have received those commissions. *Id.* at 1177–78.

However, we think that the defendants' argument that an at-will contract cannot support future damages because it is not an enforceable guarantee of future business overstates the rule in Florida. For instance, in *Nebula Glass*, we upheld an award of future damages where it was established that recent profits were on an upward trajectory and that customers were changing their behavior based on the defendant's breach. *Nebula Glass*, 454 F.3d at 1216. We specifically noted, "[The plaintiff's] lost profit claim did

not depend on any obligation by its customers, but rather on the common-sense notion that a large group of sophisticated commercial purchasers would not, without cause, collectively reject a product they had been using." *Id.* at 1216 n.1. The rule is thus dependent on the actual facts and circumstances in each case and determined by the evidence presented during the trial.

Here, there was specific evidence from fact witnesses that First Energy's need for the technicians provided by the partnership did not change before the disassociation, had not changed since then, and was unlikely to change in the future. Stuckey himself testified that he believed the business with First Energy would continue into the future, and Stuckey, through his other entity JJL Consulting, had agreed to a three-year extension with First Energy. Similar to *Nebula Glass*, where specific evidence of customers' patterns of purchasing and evidence of the business's trajectory was sufficient to sustain future damages, here, specific evidence showing the course of the First Energy contract as well as opinions showing the longevity of that business are adequate to support future damages.

This case is different from *Brough* where there was "absolutely no means by which a jury" could determine whether the real estate sales would close in time or not. *Brough*, 297 F.3d at 1178 ("The jury could only award Brough damages by speculating that [the defendant] would leave the properties on the market and accept offers from buyers."). Here, the jury did not need to speculate, but could look at the evidence showing the course of the First

Energy business and First Energy's demonstrated ongoing need for the technicians, as well as the renewal of the contract with JJL consulting. Thus, the jury could weigh this evidence and rely on the "common sense notion" that a sophisticated business would not radically change its business model suddenly and without cause.

While the defendants point to various pieces of evidence in the record to suggest that continuation of the First Energy business was less certain, the weight of that evidence was a matter for the jury. The jury rejected Precision Testing's arguments that the business would not continue, and we will not disturb their finding merely because we are urged to disagree with it.

### B.

We turn now to the defendants' argument that without an equitable accounting all damages are too speculative. This argument was waived because Precision Testing presented it for the first time in their post-verdict Rule 50(b) motion. "This Court repeatedly has made clear that any renewal of a motion for judgment as a matter of law under Rule 50(b) must be based upon the same grounds as the original request for judgment as a matter of law . . . ." *Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 903 (11th Cir. 2004). The defendants' original Rule 50(a) motion raised four grounds: (1) that the elements of a partnership were not present; (2) that Precision Testing (as opposed to Stuckey) was not liable for future damages since it had been removed from the contract; (3) that future damages were too speculative due to the nature of the business; and (4) that certain past damages were not proved. Of

those, the defendants renewed only (3) and abandoned the rest. The argument relating to the need for an accounting was not raised in the Rule 50(a) motion and accordingly could not be renewed in the Rule 50(b) motion.

Further, the argument is unsupported by Florida partnership law. *See Larmoyeux v. Montgomery*, 963 So.2d 813, 819 (Fla. Dist. Ct. App. 2007) (explaining that the current version of the partnership statute "eliminat[ed] the requirement that partners first sue for an accounting before bringing other claims"); *see also* Fla. Stat. § 620.8405(2)(a) ("A partner may maintain an action against the partnership or another partner for legal or equitable relief, with or without an accounting as to partnership business, to: [e]nforce such partner's rights under the partnership agreement.").

Finally, the defendants' argument that WL Alliance invited this "error" is meritless because WL Alliance does not complain of any error in the district court's decisions. *Cf. Pensacola Motor Sales Inc. v. E. Shore Toyota, LLC*, 684 F.3d 1211, 1231 (11th Cir. 2012) ("A party that invites an error cannot complain when its invitation is accepted.").

Accordingly, we affirm the jury's damages verdicts.

**AFFIRMED.**